IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01594-RBJ-MJW

WILLIE DWAYNE CLARK,

Plaintiff,

v.

RICK RAEMISCH, in his official and individual capacities,
ANGEL MEDINA, in his individual capacity,
LOU ARCHULETA, in his individual capacity,
TINO HERRERA, in his individual capacity,
LARRY TURNER, in his individual capacity,
TRAVIS TRANI, in his individual capacity,
DENNIS BURBANK, in his individual capacity,
CHRIS BARR, in his individual capacity,
JAMES OLSON, in his individual capacity,
CORRECTIONS CORPORATIONS OF AMERICA, a Maryland Corporation,
TODD THOMAS, in his individual capacity,
BEN GRIEGO, in his individual capacity,
JODY BRADLEY, in his individual capacity,
NICK PASTELLA, in his individual capacity, and
NICK CARRIER, in his individual capacity,

Defendants.

---

## REPORT & RECOMMENDATION ON

## THE SCC DEFENDANTS' MOTION TO DISMISS (Docket No. 54), AND

## THE CDOC DEFENDANTS' MOTION TO DISMISS (Docket No. 55)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

In this lawsuit, Plaintiff Willie Clark seeks monetary and prospective relief for the

Colorado Department of Corrections' ("CDOC") and Saguaro Correctional Center's

("SCC") alleged collusion to retaliate against him for exercising his grievance and legal

2

rights.  All Defendants have moved to dismiss (Docket Nos. 54 & 55), and District Judge R. Brooke Jackson has referred the motions to the undersigned (Docket No. 84).

The Court has reviewed the parties' briefing (Docket Nos. 54, 55, 74, 75, & 77), taken judicial notice of the Court's entire file in this case, and considered the applicable Federal Rules of Civil Procedure, statutes, and case law.  Now being fully informed, the Court makes the following report and recommendation.

## Facts as Alleged in the Amended Complaint

Plaintiff was convicted and sentenced to life without parole in Colorado, following high-profile crimes.  (Docket No. 23, ¶¶ 20-23.)  Plaintiff entered state custody in May 2010.  (*Id.*)  CDOC immediately assigned him to administrative  segregation ("ad-seg"). (*Id.* ¶ 24.)  "The reasons given for this assignment were 'his crime is STG [Security Threat  Group] related, violent, and he has a prior violent crime.'  CDOC provided that it also considered 'the current notoriety of his conviction, length of sentence, and  the severity of his crimes,'" concluding that Plaintiff's "'presence in [g]eneral [p]opulation would be  unsafe for both staff and offenders.'"  (*Id.*)  Accordingly, Plaintiff was immediately placed in Colorado's state "supermax" facility, indefinitely and despite "appropriate and respectful" and "quiet and compliant" behavior.  (*Id.* ¶¶ 25-30.)

"Immediately upon being classified to ad-seg Plaintiff began filing  grievances protesting the conditions of confinement in which he was housed."  (*Id.* ¶ 31.)  He also made contact with an attorney, who began corresponding with prison officials on Plaintiff's behalf.  (*Id.* ¶¶ 32-35.)  One prison official informed the attorney that the "true reason" for Plaintiff's ad-seg classification was "intelligence" that Plaintiff was an escape

3

risk.  (*Id.* ¶ 36.)  Plaintiff's attorney apprised Plaintiff of this conversation, a fact that

displeased prison officials.  (*Id.* ¶¶ 37-39.)  Following further procedural difficulties,

Plaintiff was transferred to a general population facility in April 2012.  (*Id.* ¶¶ 40-48.)

In June 2012, Plaintiff was assaulted as part of an altercation between other

inmates.  (*Id.* ¶¶ 49-55.)  Plaintiff was removed back to a supermax facility, placed on a

restricted status, and charged with disciplinary violations.  (*Id.* ¶¶ 56-59.)  The prison

conducted disciplinary hearings to justify ad-seg status once more.  (*Id.* ¶¶ 60-72.)

Plaintiff then challenged the ad-seg classification in Colorado state court.  (*Id.* ¶ 73.)

While this litigation remained pending, Plaintiff successfully completed a step-down

program that ordinarily moves inmates back into a general population—but he

nonetheless remained in ad-seg status, despite his attorney's efforts.  (*Id.* ¶¶ 74-83.)

In September 2013, Plaintiff was transferred out of state, to SCC—a facility in

Arizona, run by Defendant Correctional Corporation of America.  (*Id.* ¶¶ 14, 84.)  Among

other things, this transfer had the effect of frustrating Plaintiff's ongoing communications

with a Denver-based newspaper reporter.  (*Id.* ¶¶ 87-91.)  It was also accomplished in

violation of CDOC's procedures for out-of-state transfers.  (*Id.* ¶¶ 95-96.)  On October

31, 2013, Plaintiff won his legal challenge, and a judge vacated CDOC's decision to

place Plaintiff in ad-seg.  (*Id.* ¶ 97.)  SCC nonetheless placed Plaintiff in ad-seg "as a

favor to CDOC."  (*Id.* ¶¶ 98-100.)

Throughout Plaintiff's incarceration—both in Colorado and in Arizona—prison

officials repeatedly interfered with clearly marked legal correspondence and legal

telephone calls.  (*Id.* ¶¶ 64, 92-94, 101-05, 114-15, 116-37.)  Defendant Thomas

4

explicitly threatened Plaintiff with a physical beating if he did not stop filing grievances. (*Id.* ¶ 106-07.)  Defendant Thomas also interfered with Plaintiff's relationship with his attorney.  (*Id.* ¶ 108-11.)  Defendant Griego expressly told Plaintiff's attorney that Plaintiff would not be in ad-seg "if he would just 'lay low' and stop complaining."  (*Id.* ¶ 120.)

In July 2014, Plaintiff was transferred to a facility in New Mexico.  (*Id.* ¶ 125.)

Plaintiff asserts three counts.  Count One claims that each Defendant participated in retaliation against Plaintiff for exercising his First Amendment rights.  (*Id.* ¶ 138-42.)  Count Two claims that the higher-ranking Defendants in CDOC and at SCC conspired to transfer Plaintiff from CDOC to SCC in retaliation for Plaintiff's grievances and lawsuits and to inhibit Plaintiff's communications with counsel.  (*Id.* ¶ 143-47.)  Finally, Count Three alleges that the SCC Defendants falsely confined Plaintiff to his ad-seg cell.  (*Id.* ¶ 148-53.)  Plaintiff seeks declaratory relief; an injunction against future instances of such conduct, ordering his return to general population in the custody of someone other than CDOC; and damages of several varieties.  (*Id.* at 30-31.)

## Discussion

The CDOC Defendants move to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6); the SCC Defendants move under Fed. R. Civ. P. 12(b)(2) and 12(b)(6).

As to Rule 12(b)(1), Judge Jackson has said:

> Federal Rule of Civil Procedure 12(b)(1) "allows a court to dismiss a complaint for lack of subject matter jurisdiction."  There is a presumption that a cause of action lies outside a federal court's limited jurisdiction, "and the burden of establishing the contrary rests upon the party asserting jurisdiction." . . .

A motion to dismiss under Rule 12(b)(1) can either "(1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests."

*Pierce v. Green Tree Servicing LLC*, 2015 WL 6689487, at *2 (D. Colo. Nov. 3, 2015)

(internal citations omitted).

As to Rule 12(b)(2), Judge Jackson has said:

"The plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is raised early on in litigation, based on the pleadings (with attachments) and affidavits, that burden can be met with a prima facie showing."  The Court accepts as true all well pleaded, non-conclusory facts alleged in the plaintiff's complaint, and all factual disputes are resolved in the plaintiff's favor.  The Court may, but is not required to, hold an evidentiary hearing on the motion.

*SpaceCo Bus. Sols., Inc. v. Mass Engineered Design, Inc.*, 942 F. Supp. 2d 1148, 1152

(D. Colo. 2013), *aff'd*, 553 F. App'x 1008 (Fed. Cir. 2014) (internal citations omitted).

As to Rule 12(b)(6), Judge Jackson has said:

In reviewing a motion to dismiss, the Court must accept the well-pleaded allegations of the complaint as true and construe them in the plaintiff's favor.  However, the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative.  A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Allegations that are purely conclusory are not entitled to an assumption of truth.  However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard.

*Schendzielos v. Silverman*, ___ F. Supp. 3d ___, 2015 WL 5964882, at *2 (D. Colo.

Oct. 14, 2015) (internal citations omitted).

6

**I.      SCC Defendants' Motion to Dismiss (Docket No. 54)**

The SCC Defendants argue (A) that the Court lacks jurisdiction over the individual SCC Defendants; (B) that Plaintiff has not plausibly alleged several required elements of his claims; and (C) that, to the extent some claims are plausibly alleged but the Court has no personal jurisdiction over the implicated Defendants, those claims should be transferred to the District of Arizona.

**A.      Personal Jurisdiction**

The individual SCC Defendants are Arizona residents who came into contact with Plaintiff while he was incarcerated at the Arizona prison at which they work.  They argue, as a result, that the District of Colorado lacks personal jurisdiction over them.  Colorado's long-arm statute extends as far as is constitutionally permissible, *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014), and so the personal-jurisdiction analysis in this case focuses exclusively on the Due Process Clause, *see Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts."  *Id.* (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).  "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Id.* (internal quotation marks omitted) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), and *Milliken v. Meyer*, 311 U.S. 457, 463

7

(1940)).  The minimum-contacts inquiry focuses on "contacts that the 'defendant

*himself*' creates with the forum State," looking "to the defendant's contacts with the

forum State itself, not the defendant's contacts with persons who reside there."  *Id.* at

1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  Accordingly,

> [T]he plaintiff cannot be the only link between the defendant and
> the forum.  Rather, it is the defendant's conduct that must form the
> necessary connection with the forum State that is the basis for its
> jurisdiction over him.  To be sure, a defendant's contacts with the forum
> State may be intertwined with his transactions or interactions with the
> plaintiff or other parties.  But a defendant's relationship with a plaintiff or
> third party, standing alone, is an insufficient basis for jurisdiction.

*Id.* at 1122-23 (internal citation and parenthetical explanation omitted).

Simply receiving and incarcerating an inmate from another state pursuant to the

Interstate Corrections Compact is insufficient to constitute minimum contacts.  *Trujillo v.*

*Williams*, 465 F. 3d 1210, 1218-21 (10th Cir. 2006).  Nothing in the Amended Complaint

alleges that the individual SCC defendants did anything else.  The only allegations in

the Amended Complaint suggesting any conduct by the individual SCC Defendants

directed toward the *forum* rather than toward Plaintiff are (1) the conclusory allegations

that Defendants Thomas and Griego conspired with the CDOC Defendants to transfer

Plaintiff to Arizona (Docket No. 23 ¶¶143-47); and (2) the allegation "[u]pon information

and belief" that CDOC officials contacted Defendant Griego to arrange the transfer to

SCC (*id.* ¶ 85).  To be sure, the Amended Complaint also includes allegations of

statements and conduct by Defendants Thomas and Griego evidencing retaliatory

intent.  (*E.g., id.* ¶¶106, 114, 120.)  But those allegations pertain exclusively to the post-

transfer time period; they provide no reasonable inferences to support Plaintiff's

conspiracy-to-transfer theory—and neither does anything else in the Amended Complaint.  Without more, there is nothing from which it can be plausibly inferred that Defendants Thomas and Griego "'purposefully avail[ed] [themselves] of the privilege of conducting activities within [Colorado].'"  *Trujillo*, 465 F.3d at 1220 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

The Court recommends that the claims against individual SCC Defendants be dismissed or transferred for lack of personal jurisdiction.

### B. <u>Plausibly Alleged Claims</u>

<u>*Counts One & Two*</u>

Plaintiff's first two claims are both retaliation claims.  "[P]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights."  *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).  In particular, officials may not retaliate against prisoners for filing administrative grievances.  *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991).  "This principle applies even where the action taken in retaliation would be otherwise permissible."  *Smith v. Maschner*, 899 F.2d 940, 948 (10th Cir. 1990).  To establish a First Amendment retaliation claim, Plaintiff must demonstrate three elements:

> (1) that [he] was engaged in constitutionally protected activity; (2) that the defendant's actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to [his] exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).  Further, Plaintiff must show "that 'but for' the retaliatory motive, the incidents to which he refers . . . would not

have taken place." *Peterson*, 149 F.3d at 1144.  "Standing alone and without supporting factual allegations, temporal proximity between an alleged exercise of one's right of access to the courts and some form of jailhouse discipline does not constitute sufficient circumstantial proof of retaliatory motive to state a claim." *Friedman v. Kennard*, 248 F. App'x 918, 922 (10th Cir. 2007).

The SCC Defendants first argue that Defendant Correctional Corporation of America cannot be held liable because no allegations relate to it specifically, and it cannot be held liable on a *respondeat superior* theory.  *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) ("[C]aselaw from this and other circuits has extended the *Monell* doctrine to private § 1983 defendants." (discussing *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978)).  But Defendant Thomas is the Warden of SCC, and it is wholly reasonable on the alleged facts to infer that Defendant Thomas is the final decision-maker on the matters at issue.  *See Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).  Accordingly, the Court recommends that the SCC Defendants' argument on this point be rejected.

The SCC Defendants next argue that no specific factual allegations exist as to Defendants Bradley, Pastella, or Carrier, from which personal participation could be inferred.  *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (A § 1983 claim requires "personal involvement in the alleged constitutional violation.").  This is true; the factual allegations in the Amended Complaint make no mention of these three Defendants, outside of a single paragraph stating that they, along with Defendants Thomas and Griego, "assigned [Plaintiff] to ad-seg" upon arrival at SCC.  (Docket No.

23 ¶ 98.)  The Court recommends that Defendants Bradley, Pastella, and Carrier be dismissed from Counts One and Two for failure to state a claim.

The SCC Defendants finally argue that Plaintiff has failed to plausibly allege the elements of either a retaliation claim or a conspiracy to retaliate claim against Defendants Thomas and Griego.

As to Count One, Plaintiff's claim is that Defendants Thomas and Griego engaged in retaliatory conduct of a wide variety: intimidation, harassment, interference with legal correspondence, placement in ad-seg, and so on.  Plaintiff alleges that, beginning almost immediately, Plaintiff's attorney's attempts to contact him were met with resistance; that Defendant Thomas visited him in his cell and threatened him with physical violence if he continued filing grievances; and that Defendant Griego explicitly told Plaintiff's attorney that Plaintiff was in ad-seg because he refused to "lay low" and stop complaining.  This is more than sufficient to plausibly allege a claim for retaliation.  Accordingly, the Court recommends that the SCC Defendants' argument on this point be rejected.

As to Count Two, Plaintiff's claim is that Defendants Thomas and Griego conspired with the CDOC Defendants to transfer Plaintiff to SCC so that ad-seg and other retaliatory measures could be continued.  In a conspiracy claim, "[t]he ultimate question is whether [Plaintiff has] had alleged specific facts showing (1) an agreement and concerted action between [Defendants] and (2) an actual deprivation of constitutional rights."  *Shimomura v. Carlson*, 811 F.3d 349, ___ (10th Cir. 2015) (citing *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir.1998), and *Snell v.*

11

*Tunnell*, 920 F.2d 673, 701 (10th Cir.1990)).  "Conclusory allegations of conspiracy would not suffice." *Id.*  As noted above, in the personal-jurisdiction discussion, there are no allegations showing agreement or concerted action—other than one alleged phone call to arrange the transfer.  It is true that retaliatory acts have been alleged both by the CDOC Defendants and by the SCC Defendants; but nothing connects the SCC Defendants in general, or Defendants Thomas and Griego specifically, to agreeing to the *transfer* for retaliatory purposes.  It is also true that the timing of Plaintiff's transfer might support an inference of retaliatory transfer by the CDOC Defendants; but again, aside from a phone call to arrange the transfer, nothing in the Amended Complaint connects Defendants Thomas and Griego to concerted action in furtherance of an agreement.  The Court recommends that Defendants Thomas and Griego be dismissed from Count Two for failure to state a claim; because Defendant Correctional Corporation of America's liability can only be premised on the acts of Defendants Thomas and Griego, Defendant Correctional Corporation of America should also be dismissed.

### *Count Three*

Count Three is a false-imprisonment claim; the Amended Complaint does not specify the applicable source of law, but the parties appear to agree that the claim is a state-law claim governed by Arizona common law.  (*See* Docket No. 54, p.17 n.5; Docket No. 74, pp.23-26.)  Plaintiff concedes that lawful detention generally vitiates any such claim under Arizona law, *see Slade v. City of Phoenix*, 541 P.2d 550, 551 (Ariz. 1975), but argues—without citing any authority—that an otherwise-lawfully incarcerated inmate can sue for false imprisonment when wrongfully confined to ad-seg.  The Court

12

has found no authority supporting Plaintiff's position and thus recommends that Count Three be dismissed as to all Defendants.

### C.   Transfer to the District of Arizona

When it serves the interests of justice, the Court should generally sever the claims it lacks personal jurisdiction over and transfer those claims to an appropriate district rather than dismiss them. *Trujillo*, 465 F.3d at 1222-23 (transfer preferred to dismissal); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1545 (10th Cir. 1996) ("We also note that a court may sever claims under Fed. R. Civ. P. 21, and thereby enable the transfer of claims within a case."). "Nonetheless, . . . a court is authorized to consider the consequences of a transfer by taking 'a peek at the merits' to avoid raising false hopes and wasting judicial resources that would result from transferring a case which is clearly doomed." *Haugh v. Booker*, 210 F.3d 1147, 1150 (10th Cir. 2000).

Here, as discussed above, the Court concludes that claims have not been stated against Defendants Bradley, Pastella, and Carrier on Count One, nor against any SCC Defendant on Counts Two and Three. Accordingly, the Court recommends that Count One, as to Defendants Correctional Corporation of America, Thomas, and Griego, be transferred to the District of Arizona, and that the remaining claims against SCC Defendants be dismissed.

### II.   CDOC Defendants' Motion to Dismiss (Docket No. 55)

The CDOC Defendants argue that (A) certain claims for damages are barred by sovereign immunity; (B) the remaining claims are barred by the statute of limitations; (C)

13

personal participation has not been plausibly alleged as to most of the CDOC

Defendants; (D) Plaintiff has not plausibly alleged several required elements of his

claims; (E) to the extent any claims are plausibly alleged, Defendants are entitled to

qualified immunity on those claims; and (F) Plaintiff has not plausibly alleged the

requirements for compensatory or punitive damages.

### A.    Sovereign Immunity

As an initial matter, Defendant Raemisch is sued in both his official and his

individual capacities; the CDOC Defendants move to dismiss any claim for damages

against him in his official capacity, based on the Eleventh Amendment.  *See Will v.*

*Michigan Department of State Police*, 491 U.S. 58, 71 (1989).  The CDOC Defendants

are right that any such claim is barred, and Plaintiff concedes the point.  (*See* Docket

No. 75, p.27 n.4.)  In order to clarify the record, the Court recommends that all official-

capacity claims against Defendant Raemisch be dismissed insofar as they seek

monetary relief.

### B.    Statute of Limitations

The alleged mistreatment of Plaintiff began in 2010; this case was initially filed on

June 5, 2014 (*see* Docket No. 1).  Because a two-year statute of limitations applies, *see*

*Blake v. Dickason*, 997 F.2d 749, 751 (10th Cir. 1993), the CDOC Defendants argue

that claims against them are time-barred.  Defendants are wrong.  The alleged

*retaliatory* conduct—the tortious conduct at issue in this case—began when Plaintiff

began challenging his re-commitment to ad-seg following a violent altercation in the

14

general population, which was no earlier than June 6, 2012.  Accordingly, the Court recommends that the CDOC Defendants' argument on this point be rejected.

### C.   Personal Participation

"A § 1983 claim requires 'personal involvement in the alleged constitutional violation.'"  *Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012) (quoting *Gallagher*, 587 F.3d at 1069).  Out of the nine CDOC Defendants, five move to dismiss on the ground that Plaintiff has not plausibly alleged their personal participation.[1]  Out of those five, Plaintiff concedes the point as to three: Defendants Barr, Herrera, and Burbank. (Docket No. 75, p.25.)  Accordingly, the Court recommends that all claims against CDOC Defendants Barr, Herrera, and Burbank be dismissed.

Plaintiff contests the argument as to Defendants Raemisch and Turner; these Defendants are senior officials at CDOC, who did not work at any prison at which Plaintiff was housed (*see* Docket No. 23 ¶¶5 & 9).  Personal participation includes supervisory involvement.  *Dodds v. Richardson*, 614 F.3d 1185, 1194-97 (10th Cir. 2010) (citing *Buck v. City of Albuquerque*, 549 F.3d 1269, 1279 (10th Cir. 2008), and *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990)).  Supervisory liability cannot be premised on mere negligent supervision or a "should have known" theory; rather, it requires allegations of deliberate indifference, "of personal direction[,] or of actual knowledge and acquiescence."  *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992) (internal quotation marks omitted).

---

[1] The CDOC Defendants do *not* make this argument as to Defendants Medina, Archuleta, Trani, and Olson, thus conceding that these individuals are plausibly alleged to have personally participated in the conduct at issue.

15

Plaintiff has made no non-conclusory factual allegations specific to Defendants Raemisch or Turner that would suggest they held or were aware of any retaliatory intent or animus.  They are alleged to have participated only insofar as they are necessary, as managers, to the process of transferring inmates out of state.  This does not come close to meeting the standard for supervisory liability under § 1983.  Accordingly, the Court recommends that all individual-capacity claims against CDOC Defendants Raemisch and Turner be dismissed.[2]

### D.    <u>Plausibly Alleged Claims</u>

#### <u>Count One</u>

As noted above, "prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights."  *Peterson*, 149 F.3d at 1144.  "This principle applies even where the action taken in retaliation would be otherwise permissible."  *Smith*, 899 F.2d at 948 (10th Cir. 1990).  Plaintiff must show "that 'but for' the retaliatory motive, the incidents to which he refers . . . would not have taken place."  *Peterson*, 149 F.3d at 1144.

---

[2] Official-capacity claims against Defendant Raemisch should remain, because the proper defendant for injunctive relief is any individual with the authority to effect relief. *Goines v. Pugh*, 152 F. App'x 750, 753 (10th Cir. 2005); *see also Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) ("Though Gonzalez does not allege any specific involvement by Gaetz in the treatment of his hernia, the warden of Menard is a proper defendant since Gonzalez seeks injunctive relief."); *Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014) ("There are no facts indicating Director Skolnik was personally involved in Colwell's medical care, but the current NDOC Director is still a proper defendant in Colwell's claim for injunctive relief because he would be responsible for ensuring that injunctive relief was carried out, even if he was not personally involved in the decision giving rise to [the plaintiff's] claims." (internal quotation marks omitted)).

16

Defendants argue that Plaintiff has not plausibly alleged this but-for standard because his allegations establish other, legimiate reasons for the adverse treatment. In making this argument, Defendants rely heavily on *Pratt v. Rowland*, 65 F.3d 802 (9th Cir. 1995), and *Goff v. Burton*, 7 F.3d 734 (8th Cir. 1993). Both of those cases are out-of-circuit. More importantly, neither considered the applicable pleading standards: *Pratt* was resolved at the preliminary-injunction stage, and *Goff* was resolved on the merits following a bench trial. They are of little help here.

More relevantly, the Tenth Circuit holds that "[s]tanding alone and without supporting factual allegations, temporal proximity between an alleged exercise of one's right of access to the courts and some form of jailhouse discipline does not constitute sufficient circumstantial proof of retaliatory motive to state a claim." *Friedman*, 248 F. App'x at 922. Here, Plaintiff has alleged more than mere temporal proximity. He has alleged that not only was he transferred out of state during the pendency of a court challenge to his ad-seg classification, but also that he was not progressed through a step-down program along with his cohort—despite successfully completing the program. He has further alleged a pattern of interference with his legal affairs and a pattern of nonresponsiveness to the inquiries of his attorney, while housed in Colorado. Taken together, for purposes of the pleading stage, these allegations raise a plausible inference of but-for causation. Defendants do not credibly challenge whether Plaintiff has plausibly alleged any other element of a retaliation claim. Accordingly, the Court recommends that the CDOC Defendants' argument on this point be rejected.

17

_Count Two_

Count Two alleges that certain CDOC Defendants—Defendants Raemisch, Archuleta, and Trani—conspired with certain SCC Defendants to effect a retaliatory transfer.  Defendants move to dismiss for failure to plausibly allege a meeting of the minds.  _See Shimomura_, _supra_.  As discussed above, there are no allegations plausibly connecting the higher-ranking SCC Defendants to a retaliatory transfer.  Further, the Court agrees there are no non-conclusory allegations sufficient to raise any inference that Defendants Raemisch, Archuleta, and Trani came to any agreement each other or engaged in _concerted_ action.  Accordingly, the Court recommends that Count Two be dismissed as to Defendants Raemisch, Archuleta, and Trani.

### E.   **Qualified Immunity**

The CDOC Defendants argue that they are protected by qualified immunity.  This defense does not apply to injunction claims.  _Kentucky v. Graham_, 473 U.S. 159, 167 n.14, (1985) (citing _Ex parte Young_, 209 U.S. 123 (1908)).  Because the Court concludes that Count One states a claim, it must proceed forward at least for injunctive relief from Defendant Raemisch in his official capacity.  As to monetary relief, the CDOC Defendants plausibly alleged to have personally participated in the conduct at issue in Count One—_i.e._, Defendants Medina, Archuleta, Trani, and Olson—are entitled to qualified immunity unless their conduct violated Plaintiff's clearly established rights.  _Saucier v. Katz_, 533 U.S. 194, 207 (2001).

"For a right to be clearly established there must be Tenth Circuit or Supreme Court precedent close enough on point to make the unlawfulness of the officers' actions

apparent." *Mascorro v. Billings*, 656 F.3d 1198, 1208 (10th Cir. 2011).  The Supreme

Court has said: "We do not require a case directly on point, but existing precedent must

have placed the statutory or constitutional question beyond debate."  *Mullenix v. Luna*,

136 S. Ct. 305, 308 (2015).  Indeed, "the dispositive question is whether the violative

nature of particular conduct is clearly established," and "[t]he inquiry must be

undertaken in light of the specific context of the case, not as a broad general

proposition," *id.* (internal quotation marks omitted).   "The plaintiff is not required to show,

however, that the very act in question previously was held unlawful in order to establish

an absence of qualified immunity."  *Weigel v. Broad*, 544 F.3d 1143, 1153 (10th Cir.

2008).  "[A] general constitutional rule already identified in the decisional law may apply

with obvious clarity to the specific conduct in question, even though the very action in

question has not previously been held unlawful." Hope v. Pelzer, 536 U.S. 730, 741

(2002) (internal quotation marks omitted).

The Tenth Circuit "has adopted a sliding scale to determine when law is clearly

established." *Pauly v. White*, ___ F.3d ___, 2016 WL 502830, at *11-12 (10th Cir. Feb.

9, 2016).  "'The more obviously egregious the conduct in light of prevailing constitutional

principles, the less specificity is required from prior case law to clearly establish the

violation.'" *Id.* (quoting *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir.

2007)).

The Tenth Circuit has long held that transferring inmates as retaliation for filing

grievances or lawsuits violates the inmate's constitutional rights.  *Frazier v. Dubois*, 922

F.2d 560, 561-62 (10th Cir. 1990); *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir.

19

2010).  Accordingly, the Court recommends that the CDOC Defendants' argument on this point be rejected.

### F.   Eligibility for Damages

Finally, the CDOC Defendants argue that Plaintiff hasn't plausibly alleged the requirements for compensatory damages or punitive damages.

Prisoners may not sue for compensatory damages for mental or emotional harms alone; rather, they must show physical injury.  42 U.S.C. § 1997e(e).  Plaintiff's only alleged physical harm is weight loss caused by stress and anxiety.  This is insufficient. *See Hughes v. Colorado Dep't of Corr.*, 594 F. Supp. 2d 1226, 1238 (D. Colo. 2009) (collecting cases).  As a result, Plaintiff may sue for nominal damages but not compensatory damages.  *Searles v. Ven Bebber*, 251 F.3d 869, 879-81 (10th Cir. 2001).  Accordingly, the Court recommends that Plaintiff's claims be dismissed insofar as they seek compensatory damages.

Punitive damages are available for callous or reckless conduct.  *Smith v. Wade*, 471 U.S. 30, 56 (1983).  Given the pattern of interference with Plaintiff's First Amendment rights alleged in the Complaint, it is reasonable to draw an inference of a sufficiently culpable state of mind.  At the pleadings stage, that inference must be drawn in Plaintiff's favor.  Accordingly, the Court recommends that the CDOC Defendants' argument on this point be rejected.

### Recommendation

In the aggregate, the foregoing analysis concludes (1) that Counts Two and Three should be dismissed entirely, and (2) that Count One should be dismissed as to

20

some Defendants, should be transferred as to other Defendants, and should proceed

forward as to the remaining Defendants for nominal and punitive damages and

injunctive relief.

It is hereby RECOMMENDED that:

- Defendants Corrections Corporation of America, Todd Thomas, Ben Greigo, Jody Bradley, Nick Pastrella, and Nick Carrier's Motion to Dismiss (Docket No. 54) be GRANTED IN PART and DENIED IN PART; more specifically, that:

    o Count One be transferred to the U.S. District Court for the District of Arizona under Fed. R. Civ. P. 12(b)(2), Fed. R. Civ. P. 21, and 28 U.S.C. §§ 1406(a) & 1631, as to Defendants Corrections Corporation of America, Todd Thomas, and Ben Greigo;

    o Count One be dismissed under Fed. R. Civ. P. 12(b)(2) and (6) as to Defendants Jody Bradley, Nick Pastrella, and Nick Carrier;

    o Counts Two and Three be dismissed under Fed. R. Civ. P. 12(b)(2) and (6), as to Defendants Corrections Corporation of America, Todd Thomas, Ben Greigo, Jody Bradley, Nick Pastrella, and Nick Carrier; and

    o The motion be denied in all other respects; and

- Defendants Rick Raemisch, Angel Medina, Lou Archuleta, Tino Herrera, Larry Turner, Travis Trani, Dennis Burbank, Chris Barr, and James Olson's Motion to Dismiss (Docket No. 55) be GRANTED IN PART and DENIED IN PART; more specifically, that:

    o Count One and Count Two be dismissed under Fed. R. Civ. P. 12(b)(1) as to Defendant Raemisch in his official capacity, insofar as they seek monetary relief—but not insofar as they seek injunctive relief;

    o Count One and Count Two be dismissed under Fed. R. Civ. P. 12(b)(6) as to Defendant Raemisch in his individual capacity;

    o Count One be dismissed under Fed. R. Civ. P. 12(b)(6) as to Defendants Herrera, Turner, Burbank, and Barr;

- o Count Two be dismissed as to Defendants Raemisch, Archuleta, and Trani;

- o Count One be dismissed under Fed. R. Civ. P. 12(b)(6) and 42 U.S.C. § 1997e(e), insofar as it seeks compensatory damages—but not insofar as it seeks nominal or punitive damages, or injunctive relief; and

- o The motion be denied in all other respects (*i.e.*, that Count One proceed as to Defendants Medina, Archuleta, Trani, and Olson in their individual capacities for nominal and punitive damages, and as to Defendant Raemisch in his official capacity for injunctive relief).

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colo. Dep't of Corr., 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated:          February 26, 2016                */s/ Michael J. Watanabe*
                Denver, Colorado                 Michael J. Watanabe
                                                 United States Magistrate Judge