IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-01594-RBJ

WILLIE DWAYNE CLARK,

     Plaintiff,

v.

RICK RAEMISCH, in his official and individual capacities,
ANGEL MEDINA, in his individual capacity,
LOU ARCHULETA, in his individual capacity,
TINO HERRERA, in his individual capacity,
LARRY TURNER, in his individual capacity,
TRAVIS TRANI, in his individual capacity,
DENNIS BURBANK, in his individual capacity,
CHRIS BARR, in his individual capacity,
JAMES OLSON, in his individual capacity,
CORRECTIONS CORPORATIONS OF AMERICA, a Maryland Corporation,
TODD THOMAS, in his individual capacity,
BEN GRIEGO, in his individual capacity,
JODY BRADLEY, in his individual capacity,
NICK PASTELLA, in his individual capacity, and
NICK CARRIER, in his individual capacity,

     Defendants,

---

ORDER

---

     This matter is before the Court on defendants' motions to dismiss [ECF Nos. 54 and 55] and the recommendation of Magistrate Judge Michael J. Watanabe that the motions be granted in part and denied in part [ECF No. 88]. The recommendation is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

     The recommendation advised the parties that specific written objections were due within fourteen (14) days after being served with a copy of the recommendation. ECF No. 88 at 21. In

response to plaintiff's request, this Court extended the objections deadline to March 28, 2016. ECF Nos. 89, 90.  The Corrections Corporation of America-related defendants and plaintiff filed timely objections.  ECF Nos. 91, 92.  The Colorado Department of Corrections-related defendants did not file objections.  The Court has reviewed all of the relevant pleadings and Magistrate Judge Watanabe's recommendation.  Following my review, I adopt in part and reject in part the Magistrate Judge's recommendation.

## BACKGROUND

This case arises out of Plaintiff Willie Clark's time in prison in Colorado and Arizona. He is currently housed at a correctional facility in Las Cruces, New Mexico.  ECF No. 23 at 1. Clark is serving life without parole after being convicted of two murders in Colorado.  *Id.* at ¶ 20–23.

Plaintiff names a number of defendants.  At all relevant times, Rick Raemisch served as the executive director of the Colorado Department of Corrections (CDOC); Angel Medina and Lou Archuleta were Directors of Offender Services at CDOC; Tino Herrera was a criminal investigator at the CDOC Office of the Inspector General; Larry Turner was Director of the CDOC Interstate Compact Office; Travis Trani was Warden of the Colorado State Penitentiary (CSP); Dennis Burbank was the Administrative Services Manager of CSP; Chris Barr was one of CDOC's intelligence lieutenants at CSP; and James Olson was the head case manager at CSP. *Id.* at ¶¶ 5–13.  The Court will refer to these defendants collectively as "CDOC defendants."

Plaintiff also names defendants connected to the Saguaro Correctional Center (SCC), located in Eloy, Arizona.  At all relevant times, the Corrections Corporation of America (CCA) owned and operated SCC; Todd Thomas was warden of SCC; Ben Griego was an Associate Warden of SCC and also the former Director of Offender Services for CDOC; Jody Bradley was

an Associate Warden of SCC; Nick Pastella was Chief of Security at SCC; and Nick Carrier was Chief of Unit Management at SCC.  *Id.* at ¶¶ 14–19.  The Court will refer to these defendants collectively as "CCA defendants."

CDOC took custody over Clark in May 2010.  *Id.* at ¶ 23.  CDOC promptly assigned Clark to administrative segregation ("ad-seg").  *Id.* at ¶ 24.  CDOC explained its rationale for this assignment, noting his two convictions for violent crimes.  *Id.*  CDOC stated that Clark's "presence in [g]eneral [p]opulation would be unsafe for both staff and offenders" because of "the current notoriety of his conviction, length of sentence, and the severity of his crimes[.]"  *Id.* Therefore, CDOC placed Clark in Colorado's "supermax" facility—the CSP—located in Canon City, Colorado.  *Id.* at ¶¶ 25–26.  Plaintiff alleges that, despite prison officials' noting Clark's "appropriate," "respectful," and "compliant" behavior, CDOC kept Clark in ad-seg "indefinitely and unjustifiably[.]"  *Id.* at ¶¶ 27–28.  On September 23, 2010, CDOC transferred Clark to another supermax prison in Canon City—the Centennial Correctional Facility-South (CCF-South).  *Id.* at ¶ 29.  Plaintiff claims that this facility imposes "even more isolating and restrictive" conditions on prisoners.  *Id.* at ¶ 30.

Directly after his initial assignment to ad-seg in May 2010, Clark began to protest the conditions of his confinement.  *Id.* at ¶ 31.  He started to file grievances, and he also hired an attorney.  His attorney requested that CDOC place Clark in a general population facility with "less psychologically and physically damaging" conditions.  *Id.* at ¶¶ 31–35.  A prison official explained to Clark's lawyer that the "true reason" for Clark's ad-seg classification was that individuals present at Clark's trial in Denver County believed that Clark was a flight risk.  *Id.* at ¶ 36.  Clark's attorney's relayed this information to Clark, which upset prison officials.  *Id.* at ¶ 39.  Prison officials, including defendant Barr, met with Clark to discuss his alleged escape risk.

3

*Id.* at ¶ 37.  In April 2012, CDOC transferred Clark to a general population facility.  *Id.* at ¶¶ 40–48.

In June 2012 Clark was involved in an altercation with other inmates, which quickly escalated and resulted in an inmate attacking him.  Prison officials utilized pepper spray against the other inmates to "break up the altercation," but according to plaintiff they "violently restrained" Clark.  *Id.* at ¶¶ 49–55.  CDOC immediately moved him back to CCF-South charged him with disciplinary actions, and placed him on a restricted status.  *Id.* at ¶¶ 56–59.  The prison held a hearing to determine whether another ad-seg classification was a justified and concluded that it was.  *Id.* at ¶¶ 60–72.

Clark initiated a proceeding in the Fremont County District Court to challenge his ad-seg classification.  *Id.* at ¶ 73.  During the pendency of this case, Clark participated in a "step-down" program.  The step-down program is designed to transition inmates from a high-security facility back into a general population facility.  CCF-South closed while Clark was housed there, so he was moved back to CSP.  *Id.* at ¶ 74 n.1.  Clark successfully completed this program, but his ad-seg status did not change, and he remained at CSP.  *Id.* at ¶¶ 74–83.

In September 2013 CDOC transferred Clark to SCC.  *Id.* at ¶ 84.  Clark's transfer disrupted his communications with a newspaper reporter based in Denver who was writing a "lengthy feature story" about Clark's "confinement in CDOC."  *Id.* at ¶¶ 87–91.  Plaintiff alleges that after his transfer, CDOC "refused to provide information" to the reporter about where it had transferred Clark.  *Id.* at ¶ 89.  Additionally, the transfer violated CDOC's procedures for out-of-state transfers and was "effectuated with unprecedented speed[.]"  *Id.* at ¶ 95.

Shortly after his transfer, on October 2013, Fremont County District Court Stephen Groome vacated CDOC's decision to place Clark in ad-seg.  *Id.* at ¶ 97.  Despite this order,

defendants Thomas, Griego, Bradley, Pastella, and Carrier (as agents of CCA) placed Clark in ad-seg at SCC. *Id.* at ¶ 98. Thomas and Griego told Clark his transfer to SCC "was a favor to CDOC," and he would remain there for six to nine months on a "courtesy hold." *Id.* at ¶ 100. The ad-seg conditions at SCC are said to be "perhaps even more isolating and psychologically damaging" than those in CDOC. *Id.* at ¶ 99.

Throughout Clark's time in Colorado and Arizona correctional facilities, he claims that prison officials interfered with his legal matters and his interactions with his lawyer. For example, officials eavesdropped on his phone calls, opened legal correspondence, attempted to prevent his attorney from calling him, and housed him in cells with informants who "searched through" and read his confidential legal materials. *Id.* at ¶¶ 64, 92–94, 101–05, 114–15, 116–37. Additionally, officials threatened adverse actions if he continued seeking the assistance of legal counsel and advocating for his rights. *Id.* at ¶¶ 103–105. Specifically, Thomas threatened to send someone to physically harm Clark if he kept filing grievances and advocating for "redress of his rights." *Id.* at ¶ 106. Clark's attorney did not make any further contact with CCA officials out of fear for Clark's safety. *Id.* at ¶ 107. Thomas and Greigo used derogatory language when speaking with Clark about his attorney and told him that she was being disbarred, which was not true. *Id.* at ¶ 109. Additionally, Griego informed Clark's attorney that Clark would not remain in ad-seg if "he would just 'lay low' and stop complaining." *Id.* at ¶ 120.

In July 2014 after "two more months of tortuous treatment," Clark was transferred from SCC to the prison in New Mexico where he is housed today. *Id.* at ¶ 125. On June 5, 2014, Clark filed this suit, alleging that CDOC defendants and CCA defendants retaliated against him for exercising his First Amendment rights. ECF No. 1. He filed his Amended Complaint, the operative pleading, on November 26, 2014. ECF No. 23. He brings three claims for relief:

1. Claim One for retaliation in violation of the First Amendment against all defendants;

2. Claim Two for conspiracy to retaliate in violation of the First Amendment asserted against defendants Raemisch, Archuleta, Trani, CCA, Thomas, and Griego; and

3. Claim Three for false imprisonment against defendants CCA, Thomas, Griego, Bradley, Pastella, and Carrier.

ECF No. 23 at 28–30.  Plaintiff seeks declaratory and prospective relief, an order mandating his return to general population in the custody of another entity other than CDOC, and different types of damages.  *Id.* at 30–31.

All defendants have moved to dismiss.  CCA defendants move to dismiss for lack of personal jurisdiction and failure to state a claim.  ECF No. 54.  CDOC defendants move to dismiss for lack of subject matter jurisdiction and failure to state a claim.  ECF No. 55.

## ANALYSIS

### I.      STANDARD OF REVIEW.

Following the issuance of a magistrate judge's recommendation on a dispositive matter, the district court judge must "determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).

### A.  <u>Subject Matter Jurisdiction – Fed. R. Civ. P. 12(b)(1).</u>

A court may dismiss a complaint for lack of subject matter jurisdiction.  Rule 12(b)(1) motions may come in two forms: either "a facial attack on the complaint's allegations as to subject matter jurisdiction [that] questions the sufficiency of the complaint" or "a factual attack" on the facts upon which subject matter jurisdiction depends.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary

> hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id*. at 1003 (internal citations omitted). Where resolution of the jurisdictional question "is intertwined with the merits of the case," the court must convert the Rule 12(b)(1) motion into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion. *Id.*; Fed. R. Civ. P. 12(d). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (internal citation omitted).

### B.  Personal Jurisdiction – Fed. R. Civ. P. 12(b)(2).

"The plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is raised early on in litigation, based on the pleadings (with attachments) and affidavits, that burden can be met with a prima facie showing." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (internal citation omitted). The Court accepts as true all well-pleaded, non-conclusory facts alleged in the plaintiff's complaint and resolves all factual disputes in the plaintiff's favor. *Id.* The Court may, but is not required to, hold an evidentiary hearing on the motion. *Fireman's Fund Ins. Co. v. Thyssen Mining Construction of Canada, Ltd. Const.*, 703 F.3d 488, 494 (10th Cir. 2012).

To establish personal jurisdiction over out-of-state defendants, "a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010). Colorado's "long-arm" statute, C.R.S. § 13-1-124, has been interpreted to confer the maximum jurisdiction permitted by constitutional due process. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005). Therefore, the Court need only determine whether exercise of jurisdiction over the defendants comports with due process.

7

Due process requires that defendants have "minimum contacts" with the forum state so that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash. Office of Unemployment Comp. and Placement,* 326 US. 310, 323 (1945).  At a minimum, the defendant must have done something purposefully to have availed itself of the privilege of conducting activities in the forum state. *Hanson v. Denckla,* 357 U.S. 235, 253 (1958).  If the cause of action arises out of the defendant's specific activities in the forum state, there is no due process problem.  Even when the cause of action does not arise out of or relate to the defendant's activities in the forum state, extending jurisdiction over the defendant is consistent with due process if the defendant has had "continuous and systematic" contacts with the state.  *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414–16 (1984).

### C.   <u>Failure to State a Claim – Fed. R. Civ. P. 12(b)(6).</u>

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard.  *See, e.g., Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

II.     **CCA DEFENDANTS' MOTION TO DISMISS.**

The CCA defendants argue that (1) the Court lacks personal jurisdiction over the individual CCA defendants; (2) Clark does not plausibly allege certain elements of his claims; and (3) where Clark does state a claim, but the Court does not have personal jurisdiction over those particular defendants, the Court should transfer those claims to the District of Arizona. *See* ECF No. 54 at 1–2.

A.     **Personal Jurisdiction over the CCA Individual Defendants.**

First, the Magistrate Judge concluded that the Court has no personal jurisdiction over claims against the individual CCA defendants. ECF No. 88 at 8. Neither party objects to this determination. *See* ECF Nos. 91, 92. If a party does not properly object to a section of the Magistrate Judge's conclusion, "the district court may review a magistrate . . . [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985) (stating that "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings")).

The Court has reviewed the relevant pleadings on the issue of personal jurisdiction and concludes that "there is no clear error on the face of the record." Fed. R. Civ. P. 72 advisory committee's note. The Court adopts Magistrate Judge Watanabe's recommendation and concludes that the Court lacks personal jurisdiction over any of the individual CCA defendants.

Therefore, the Court can either dismiss plaintiff's claims against the individual defendants or transfer them. *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]).") The district court has discretion to

9

consider transfer "according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotations and citation omitted). Additionally, the district court may "consider the consequences of a transfer by taking 'a peek at the merits' to avoid raising false hopes and wasting judicial resources that would result from transferring a case which is clearly doomed." *Haugh v. Booker*, 210 F.3d 1147, 1150 (10th Cir. 2000).

### B. **Plaintiff's Claims**.

In his recommendation, Magistrate Judge Watanabe considered whether Clark had plausibly alleged his claims under 12(b)(6). Based on this look at the merits, the Magistrate Judge made recommendations on whether the claims against the individual plaintiffs should be transferred or dismissed. Magistrate Judge Watanabe also conducted a review of whether Clark states claims against CCA itself. He recommends that this Court transfer Claim One as against Thomas, Griego, and CCA; dismiss Claim One as against Bradley, Pastella, and Carrier; and dismiss Claims Two and Three in their entirety. *See* ECF No. 88 at 8–12.

In considering whether to transfer or dismiss the claims against the individual defendants, the Court takes its own "peek" at the merits. The Court conducts a review pursuant to 12(b)(6) of the claims against CCA itself. The Court will address each claim and each subgroup of defendants in turn.

### 1. **Claim One – Retaliation in Violation of the First Amendment.**

The First Amendment protects against retaliation for exercising one's constitutional rights. *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir.1998) (internal quotations and citation omitted). The Tenth Circuit has established the elements of a retaliation claim:

(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a

person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007). A plaintiff must show that "but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Smith v. Maschner*, 899 F.2d 940, 949–950 (10th Cir. 1990) (internal quotations omitted).

> ### a. <u>Bradley, Pastella, and Carrier.</u>

Neither party objects to the Magistrate Judge's recommendation that the Court find that plaintiff fails to state a retaliation claim against Bradley, Pastella, and Carrier. *See* ECF Nos. 91, 92. I have reviewed the relevant pleadings on this issue, and I conclude that "there is no clear error on the face of the record." Fed. R. Civ. P. 72 advisory committee's note. Therefore, having weighed issues of both convenience and fairness, the Court concludes that it is an inefficient use of judicial resources to transfer this claim to another district. The Court adopts Magistrate Judge Watanabe's recommendation and grants the motion to dismiss Clark's retaliation claim against Bradley, Pastella, and Carrier.

> ### b. <u>CCA, Thomas, and Griego.</u>

Defendants filed specific and timely objections to the Recommendation's treatment of Claim One against CCA, Thomas, and Griego. ECF No. 91 at 3–11. Therefore, I have conducted a de novo review, and I agree with the Magistrate Judge's conclusions that Claim One against Thomas and Griego should be transferred, but I respectfully decline to transfer the claim against CCA.

> ### (1) <u>Thomas and Griego.</u>

I agree with Magistrate Judge Watanabe's assessment that Clark's retaliation claim against Thomas and Griego has enough merit to warrant transfer to the District of Arizona. Magistrate Judge Watanabe correctly focused on these individual defendants' interference with

Clark's engagement in constitutionally protected activity—his communicating with his attorney and his filing grievances or otherwise advocating for his rights.  ECF No. 88 at 3–4, 10. Defendants note that plaintiff "conceivably" has a right to counsel.  ECF No. 91 at 8. Additionally, it is "clearly established that denying a person the ability to report an alleged constitutional violation through a grievance or complaint is an infringement of protected speech."  *Meyer v. Bd. of Cty. Comm's. of Harper Cty.*, 482 F.3d 1232, 1243 (10th Cir. 2007).

Plaintiff makes numerous allegations that plausibly indicate that Thomas and Griego were motivated to retaliate against him for his exercising his right to an attorney or his right to file grievances and advocate for his rights.  For example, Thomas and Griego placed informants in Clark's cell to search through his confidential legal materials.  ECF No. 23 at ¶¶ 114–115. Additionally, Thomas told Clark's attorney that "he was not going to have [her] calling the facility on behalf of Mr. Clark."  *Id.* at ¶ 104.  Plaintiff's counsel took this as a threat of adverse action against Clark "if she continued to advocate on his behalf."  *Id.* at ¶ 105.  Furthermore, Thomas and Griego frequently referenced Clark's lawyer and the organization she works for in conversations with plaintiff.  *Id.* at ¶¶ 108–111.  During those conversations, Thomas and Griego are alleged to have made derogatory comments about Clark's attorney and told him that she was being disbarred, which they knew to be false.  *Id.* at ¶¶ 108–110.  For example, they told Clark that she was a "j-leg" attorney.  *Id.* at ¶ 110.  Plaintiff claims that Thomas and Griego were insinuating that she was "crooked."  *Id.*

Additionally, Thomas threatened to "send the security captain" to physically harm Clark if he kept filing grievances and advocating for "redress of his rights."  *Id.* at ¶ 106.  As a result of Thomas' threat, Clark's attorney did not make any further contact with SCC officials out of fear for Clark's safety.  *Id.* at ¶ 107.  Defendants argue that plaintiff does not allege that he filed any

grievances after arriving at SCC, so that Thomas' threat cannot be seen as retaliatory conduct. ECF No. 91 at 9.  However, Thomas' threat "explicitly references Clark's filing grievances, which raises the inference that Clark did, in fact, file grievances at SCC.  Additionally, Griego informed Clark's attorney that Clark would not remain in ad-seg if "he would just 'lay low' and stop complaining."  *Id.* at ¶ 120.  This allegation raises the inference that Thomas and Griego were keeping Clark in ad-seg because he kept "complaining," which could plausibly relate to the filing of grievances.

In sum, following my review of the Magistrate Judge's Recommendation and all of the relevant pleadings, I conclude that this claim is not "clearly doomed" and transferring it serves the interest of justice.

<u>(2)  CCA.</u>

The CCA defendants correctly argue that CCA cannot be held liable on a vicarious liability theory.  Therefore, plaintiff's claim against CCA must proceed within the bounds of municipal liability.  *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).  In order to state a claim for municipal liability, a plaintiff must show the existence of (1) an official policy or custom; (2) a direct causal link between the policy or custom and the injury alleged; and (3) deliberate indifference on the part of the municipality.  *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) (a plaintiff must "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury").  The "official policy or custom" requirement "was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."  *Pembaur*, 475 U.S. at 479.  A plaintiff may allege the existence of a municipal policy or custom in the form of (1) an

officially promulgated policy; (2) an informal custom amounting to a widespread practice; (3) the decisions of employees with final policymaking authority; (4) the ratification by final policymakers of the decisions of their subordinates; or (5) the failure to adequately train or supervise employees. *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010).

Plaintiff must also allege a direct causal link between the municipal policy and the injury alleged. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). That is, the municipality must be the "direct cause" or "moving force" behind the constitutional violation. *Smedley v. Corr. Corp. of Am.*, 175 F. App'x 943, 946 (10th Cir. 2005); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) ("It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983.").

Finally, plaintiff must allege the requisite degree of culpability on the part of the municipality. *Schneider*, 717 F.3d at 769. "[T]he prevailing state-of-mind standard for a municipality is deliberate indifference regardless of the nature of the underlying constitutional violation." *Id.* at 771 n.5. Deliberate indifference can be plausibly alleged where the municipality "has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Id.* at 771 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)).

Magistrate Judge Watanabe concluded that plaintiff has stated a municipal liability claim against CCA because he names Thomas, the warden of SCC, as an individual defendant. The Magistrate Judge determined that plaintiff's alleged facts make it plausible that Thomas is "the final decision-maker on the matters at issue." ECF No. 88 at 9. Therefore, Magistrate Judge

14

Watanabe relied on the Supreme Court's holding in *Pembaur* for the principle that Thomas is a final policymaker, and therefore, his decisions or his ratification of his subordinates' decisions can establish an official policy or custom of CCA.

Even if the Court were to agree that plaintiff sufficiently alleges the first component of a municipal liability claim—the existence of an official policy on the basis of Thomas' role as final policymaker—Clark's claim against CCA must fail for a failure to allege the remaining components of municipal liability.  The Complaint is devoid of specific allegations that make it plausible that this official policy or custom was the "moving force" behind the alleged retaliation or that CCA—through Thomas in his role as warden—possessed the requisite culpable mind.  Therefore, I conclude that Clark fails to state a retaliation claim against CCA.

### 2.  Claim Two – Conspiracy of Retaliation.

Plaintiff's second claim is also a retaliation claim, which he brings against CCA, Thomas, and Griego.  ECF No. 23 at 28.  Clark alleges that CCA, Thomas, and Griego conspired with high-ranking officials at CDOC to transfer him to SCC in retaliation for plaintiff's filing of grievances and lawsuits and to interfere with his legal representation.  *Id.* at ¶¶ 143–47.

Magistrate Judge Watanabe recommended dismissing this claim in its entirety as plaintiff fails to plausibly allege a claim.  ECF No. 88 at 11.  Neither party filed an objection to his recommendation.  Accordingly, I have reviewed the record for clear error and found none.  Following this look at the merits, I conclude that it would be a waste of judicial resources to transfer any part of this claim to the District of Arizona.  Therefore I adopt Magistrate Judge Watanabe's recommendation that Claim Two be dismissed in its entirety against CCA, Thomas, and Griego.

### 3.  **Claim Three – False Imprisonment.**

Magistrate Judge Watanabe recommends dismissing plaintiff's third claim for false imprisonment for a failure to state a claim.  ECF No. 88 at 11–12.  Plaintiff objects to Magistrate Judge Watanabe's recommendation, contending that the Court should not dismiss this claim but rather should transfer it to the District of Arizona.  ECF No. 92 at 4.  CCA defendants did not object to the Magistrate Judge's recommended outcome, but they did object that he did not explicitly address their claim that they are entitled to attorney's fees and costs incurred in defending against Claim Three.  ECF No. 91 at 11–12.  Both plaintiff and CCA defendants filed a response to the other party's objections.   ECF Nos. 96, 98.  I will address each issue in turn.

#### a.   Plaintiff's Objections to the Dismissal of Claim Three.

Both parties agree that Arizona common law governs this false imprisonment claim.  *See* ECF Nos. 54 at 17 n.5; 74 at 23–26.  To state a claim for false imprisonment under Arizona law, a plaintiff must allege that: "(1) the defendant acted with intent to confine another person within boundaries fixed by the defendant; (2) the defendant's act resulted in such confinement, either directly or indirectly; and (3) the [plaintiff] was conscious of the confinement or was harmed by it."  *Morales v. Barnett*, 2008 WL 4638133, *3 (Ariz. App. 2008) (internal citation omitted). The amount of confinement need not be great, as a claim for false imprisonment can be founded on "[a]ny restraint, however slight, upon another's liberty to come and go as one pleases[.]" *Swetnam v. F.W. Woolworth Co.*, 318 P.2d 364, 366 (Ariz. 1957).  A false imprisonment claim fails if the defendant can establish that legal authority or a valid legal process authorized the restraint on the plaintiff's liberty.  *Slade v. City of Phoenix*, 541 P.2d 550, 551–52 (Ariz. 1975).

CCA defendants argue that Clark's imprisonment at SCC was lawful.  ECF No. 54 at 19. Plaintiff concedes that lawful detention typically defeats a false imprisonment claim.  *See Slade*,

541 P.2d at 551.  However, plaintiff's theory is that the relevant restraint on his liberty was his confinement in ad-seg and *not* incarceration in the first place.  ECF No. 74 at 25.  Plaintiff argues that the CCA defendants, in asserting this affirmative defense, did not carry their burden of identifying a lawful basis for placing Clark in ad-seg upon his arrival at SCC.  ECF No. 92 at 8; *see also* ECF No. 54 at 17–20.  Plaintiff claims that Clark was transferred pursuant to the Interstate Corrections Compact (ICC), so CCA defendants were "acting as agents of CDOC" and were "required to comply with Colorado law" when making decisions relating to Clark.  ECF No. 74 at 25.  Plaintiff cites the ICC for the notion that a "receiving state shall not deprive any inmate" of rights that the "inmate would have had if confined in an appropriate institution of the sending state."  C.R.S. § 24–60–1602(e).  Therefore, plaintiff alleges that CCA defendants assigned him to and kept him in ad-seg at SCC in opposition to Fremont County Judge Groome's decision to reverse Clark's ad-seg classification in Colorado.  ECF Nos. 1 at ¶¶ 97–98; 74 at 25.

In concluding that plaintiff had not stated a claim, Magistrate Judge Watanabe noted that plaintiff did not supply any authority to support his position.  ECF No. 88 at 11–12.  However, in his objections, plaintiff cites a case where an officer in a CCA-operated prison pled guilty in New Mexico state court to false imprisonment and criminal sexual penetration.  *See Spurlock v. Townes*, 594 Fed.Appx. 463, 465 (10th Cir. 2014) (unpublished).  The official confined female prisoners to specific parts of the prison in order to rape them.  *Spurlock v. Townes*, 2016 WL 945161, at *1 (N.M. 2016).  The prisoners filed suit in the U.S. District Court for the District of New Mexico for compensatory and punitive damages for violation of their constitutional rights and for various state tort law claims.  *Id.* at *2.  Relying on judicial estoppel principles, the District Court granted judgment as a matter of law against the official on the constitutional claim and the intentional torts of sexual assault and false imprisonment but concluded that defendants

were not responsible for the official's intentional torts under vicarious liability. *Id.* The cross-appeals to the Tenth Circuit did not raise the issue of whether prison officials could be liable for falsely imprisoning inmates but rather addressed comparative fault and the defendants' obligation to pay the full judgment entered against the prison official. *Spurlock*, 594 Fed.Appx. at 464. The Circuit certified a question about comparative fault to the New Mexico Supreme Court, which accepted the certification and held that under certain circumstances, a private prison and its warden can be liable for the intentional torts, including false imprisonment, of its employee under the aided-in-agency theory. *Spurlock*, 2016 WL 945161, at *1.

The *Spurlock* litigation does not implicate ad-seg classification or Arizona law, but plaintiff argues that it demonstrates that prison officials and a prison itself may be held liable for the false imprisonment of an individual who is lawfully incarcerated. Additionally, the Court notes CCA defendants' listing of multiple cases where courts concluded that a plaintiff's ad-seg classification did *not* amount to false imprisonment. However, the Arizona courts have not considered this issue, and it is not the Court's role to define the parameters of Arizona law. At this stage, the Court will assume that the Arizona courts could conceivably recognize a false imprisonment claim based on an inmate's ad-seg classification if the classification itself was unlawful. At the summary judgment stage, it may become clear that CCA defendants followed a valid legal process when assigning Clark to ad-seg and keeping him there. However, at this stage, following my look at the merits, I cannot conclude that Clark's false imprisonment claim is "clearly doomed." Therefore, I find that transferring Claim Three to the District of Arizona serves the interests of justice.

b.  <u>Fees and Costs.</u>

Second, CCA defendants argue that they requested attorney's fees and costs in defending Claim Three pursuant to Arizona Revised Statute ("A.R.S.") § 13–420, and they object that the "Magistrate Judge did not address that request specifically[.]"  *See* ECF Nos. 91 at 11–12; 54 at 19–20; 88 at 20.  Because I conclude that it is appropriate to transfer rather than dismiss Claim Three, it is premature to reach this issue.

## III.   CDOC DEFENDANTS' MOTION TO DISMISS.

CDOC Defendants raise a number of arguments for the dismissal of plaintiff's claims. They attest that (1) sovereign immunity bars claims for monetary relief against Raemisch in his official capacity; (2) the statute of limitations bars the rest of plaintiff's claims; (3) plaintiff fails to allege the personal participation of most of the CDOC defendants; (4) qualified immunity protects them from any plausibly alleged claims; and (5) Clark fails to fulfill the pleading requirements for compensatory or punitive damages.  *See* ECF No. 55.

In a thorough and detailed fashion, Magistrate Judge Watanabe recommends that the Court do the following:

1.  Find that the statute of limitations does not bar plaintiff's claims, ECF No. 88 at 13–14;

2.  Dismiss Claim One under Rule 12(b)(1) for damages against Raemisch in his official capacity, but permit plaintiff to seek injunctive relief from Raemisch in his official capacity, *id.* at 20;

3.  Dismiss Claim One under Rule 12(b)(6) for failure to state a claim against Raemisch in his individual capacity, Herrera, Turner, Burbank, and Barr, *id.*;

4. Dismiss Claim One under Rule 12(b)(6) and 42 U.S.C. § 1997e(e) as it seeks compensatory damages, but not as it seeks nominal or punitive damages or injunctive relief, *id.*;

5. Dismiss Claim Two in its entirety against CDOC defendants; *id.* at 17, 19, 21; and

6. Deny CDOC defendants' motion in all other respects. *Id.* at 21.

Magistrate Judge Watanabe's recommendation would permit Claim One to proceed against Medina, Archuleta, Trani, and Olson in their individual capacities for nominal and punitive damages and against Raemisch in his official capacity for injunctive relief. *Id.* Plaintiff does not object to these recommendations, and CDOC defendants did not file any objections. *See* ECF No. 92. Therefore, I have reviewed the relevant pleadings on these issues, and I find that there is no clear error. The Court adopts Magistrate Judge Watanabe's recommendation to grant in part and deny in part CDOC defendants' motion to dismiss.

**ORDER**

For the reasons stated above, CCA defendants' motion to dismiss [ECF No. 54] is granted in part and denied in part. CDOC defendants' motion to dismiss [ECF No. 55] is granted in part and denied in part.

- Claim One is dismissed against Bradley, Pastella, Carrier, CCA, Herrera, Turner, Burbank, Barr, and Raemisch in his individual capacity.

- Claim One is dismissed for damages against Raemisch in his official capacity.

- Claim One proceeds in this Court against Raemisch in his official capacity for injunctive relief only and against Medina, Archuleta, and Trani as it seeks compensatory damages, but not as it seeks nominal or punitive damages.

- Claim One as against Thomas and Griego is transferred to the U.S. District Court for the District of Arizona.

- Claim Two is dismissed in its entirety.

- Claim Three as against CCA, Thomas, Griego, Bradley, Pastella, and Carrier is transferred to the U.S. District Court for the District of Arizona.

DATED this 7th day of April, 2016.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge